# Bingaman *v.* McCandless.

*Partition—Mortgage—Judgments—Priority of liens—Shifting of liens —Purparts—Subrogation.*

1. Where two brothers become by descent equal owners in common of certain real estate, and thereafter judgments are entered against one of the brothers, and subsequently the two brothers acquire by purchase equal undivided interests in another piece of real estate, and afterwards the brother who had the judgments against him, mortgages his undivided interest in the second piece of real estate, and after this mortgage was created the two properties are divided in partition proceedings into two purparts of exactly equal value, and the purpart allotted to the brother who was judgment debtor and mortgagor consisted entirely of a portion of the first piece of real estate, the lien of the mortgage is discharged from the second piece of real estate allotted to the other brother; but it does not follow that the lien of the mortgage in following the title of the mortgagor and in becoming seated on the purpart which he had acquired in severalty gave it precedence over the judgment creditors having liens upon that purpart.

2. In such a case the mortgage creditor cannot successfully invoke the doctrine of subrogation, nor can he work out his claim through some enlargement of the principle which controls where owelty money is due to the cotenant who created the incumbrance.

3. There is no line of separation or division running through a purpart by which it can be divided to apportion liens.

Argued May 7, 1913.   Appeal, No. 212, April T., 1913, by F. Richard Weaver, Exceptant, from order

## 156    BINGAMAN *v.* McCANDLESS.

of C. P. Allegheny Co., Jan. T., 1913, No. 536, distributing proceeds of sheriff's sale in case of C. F. Bingaman v. Thomas H. McCandless and Maie McCandless and the South Side Trust Company of Pittsburg, Trustee in Bankruptcy of Thomas H. McCandless. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Special return of sheriff. Before EVANS, J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in dismissing exceptions to the return.

*William Arnot Wilson,* for appellant.—A mortgage on the undivided interest of a cotenant is divested by a subsequent partition of the property and the lien thereof shifts (a) to the purpart allotted to the mortgagor, or (b) to the mortgagor's share of the purchase money produced by a sale, or (c) to the owelty which takes the place of the debtor's interest in the land: Wright v. Vickers, 81 Pa. 122; Stewart v. Allegheny Nat. Bank, 101 Pa. 342.

Where upon the partition of a tract of land owelty is awarded, it constitutes a lien on the purpart on which it is charged prior to judgments given by the tenant of such purpart before the partition: McCandless's App., 98 Pa. 489; Reed v. Fidelity Ins., Trust & Safe Dep. Co., 113 Pa. 574; Riddle's App., 37 Pa. 177.

When a party is required to pay a debt which another in good conscience ought to pay, he is entitled to use the creditor's security to obtain reimbursement: McCandless's App., 98 Pa. 489.

Appellant is subrogated to the rights of McCandless's cotenant: International Harvester Co. v. Tuscarora Twp., 43 Pa. Superior Ct. 410; Lidderdale v. Robinson, 25 U. S. 594; Mosier's App., 56 Pa. 76; Milligan's App., 104 Pa.

503; Bender v. George, 92 Pa. 36; Lackawanna Trust & Safe Dep. Co. v. Gomeringer, 236 Pa. 179.

*G. W. Williams*, with him *Jas. W. Collins*, for appellees.

OPINION BY HEAD, J., October 13, 1913:

This contention arises out of the distribution of a fund produced by a sheriff's sale of real estate. On its face the distribution presents no unusual features, the money having been awarded to the judgment creditors of the execution defendant in the order of their priority as shown by the record. The appellant excepted to the decree made and claimed that the money should have been awarded to him to an amount sufficient to satisfy a mortgage which he held, executed by the defendant in the judgments; although the property pledged by that mortgage was not the property that was sold by the sheriff, and although the property sold never was embraced, and never was intended to be embraced in the mortgage. To make plain the nature of the somewhat unusual claim of the appellant under these circumstances it will be necessary to briefly state the facts which appear in the case.

Thomas H. McCandless and his brother, upon the death of their father in 1890, became the equal owners in common of the fee of certain property in the borough of Crafton, Allegheny county. Whilst the title remained in this condition certain judgments were entered of record against Thomas, one of the cotenants. These judgments, of course, became liens from the date of their entry upon his undivided half in the property aforesaid. In September, 1910, the same two brothers acquired by purchase the title to an improved lot of ground in the city of Pittsburg, each becoming the owner of the undivided one-half thereof. Later, in the same year, Thomas. the debtor in the judgments referred to, executed and delivered to Weaver, the appellant, a mortgage on his undivided interest in the Pitts-

burg lot. The judgments that had been entered, long before the acquisition of this property, were never revived so as to become liens upon it, and it is conceded that on the record of the mortgage referred to it became the first lien on the undivided half of the mortgagor in the Pittsburg property.

One of the brothers, in 1911, instituted an action of partition in the court of common pleas of Allegheny county which was so proceeded in that all of the common property, that in Crafton as well as that in Pittsburg, was divided into two purparts which were appraised as of exactly equal value. One of these purparts was allotted to each one of the brothers in severalty. As a consequence there was no sale with the resultant conversion of any part of the common property into money, and there was no owelty from either brother to the other. The purpart allotted to Thomas, the judgment debtor and mortgagor, consisted entirely of property in Crafton, although it did not include all of the common property there located. The purpart allotted to his brother in severalty included the entire lot in Pittsburg and the remainder of the Crafton property not embraced in the purpart allotted to Thomas. The legal effect of the partition thus made, quo ad the judgment creditors and the mortgagee referred to, is the question presented by this appeal.

The learned counsel for the appellant starts with the proposition that the lien of his mortgage was discharged from the property on which it had rested by the allotment of that property in severalty to a cotenant of the mortgagor. Of the correctness of this proposition we have no doubt. It has been many times declared in the decisions of the Supreme Court and must now be regarded as settled: Wright v. Vickers, 81 Pa. 122; McCandless' Appeal, 98 Pa. 489; Stewart v. Allegheny Bank, 101 Pa. 342; Reed v. Ins. Trust & Safe Deposit Co., 113 Pa. 574; Eckels v. Stuart, 212 Pa. 161. The principle on which these decisions rest may be briefly stated thus:

The right of every one of a number of cotenants to have partition of the common property is superior or paramount to the right of any individual cotenant to affect it by the incumbrance of his undivided interest. Every mortgage or judgment creditor of the individual cotenant must take his incumbrance subordinate to that paramount right and his incumbrance creates no obstacle to the working out of the partition with all of the incidents that may by law attach. As a consequence, if a tenant in common is allotted a purpart of land, after his cotenant has incumbered his own undivided interest, the allottee must take the entire purpart free and discharged from the lien of any incumbrances which had theretofore existed against the undivided interest only of his cotenant. Such is the doctrine of the cases, and we must therefore agree that the lien of the mortgage of the present appellant was, by the decree in partition, lifted from the Pittsburg property and every interest in it, as effectually as if the title of his mortgagor had been overthrown by some paramount title in a stranger.

The second proposition of the appellant is that when the lien of his mortgage on the property in Pittsburg was lost by the operation of the decree in partition, it followed the title of the mortgagor and became seated on the purpart which he had acquired in severalty. We are of opinion the authorities cited will also sustain this proposition. It was said by Mr. JUSTICE TRUNKEY in Reed v. Ins. Trust & Safe Deposit Co., 113 Pa. 574: "The right of tenants in common to make partition, and enjoy all its incidents, is paramount to the right of the lien-creditor against any one of the tenants. If necessary to effect the legitimate purpose of the partition, the lien must be shifted to the part allotted to the debtor, or if none be allotted to him, the lien against the land becomes divested." If the two propositions thus far considered were sufficient to sustain the claim of the exceptant, his case would be made out. But he must go a step, and a long step, farther.

His third proposition is that his mortgage lien, after being divested from the property in Pittsburg, and after being shifted to the property in Crafton allotted to his mortgagor in severalty, takes precedence there over the judgment creditors whose liens had attached to the mortgagor's interest in that property long before the mortgage was executed. What warrant can be found in the authorities for the soundness of this proposition? It was held in Wright v. Vickers, 81 Pa. 122, that a mortgage, first in lien upon an undivided interest, was discharged by the sale in partition which in that case became necessary in order to work out the rights of the cotenants; and this too notwithstanding the provisions of the act of March 23, 1867, P. L. 43, preserving the lien of a first mortgage from destruction "by any judicial sale or other sale whatsoever, whether such judicial sale shall be made by virtue or authority of any order or decree of any orphans' or other court, or of any writ of execution, or otherwise howsoever."

But it was further held that the fund arising from such sale was to be regarded as land, in another form, and that the share of the mortgagor therein truly measured the interest from which the lien of the mortgage had been discharged; and that as a consequence such lien would attach to that share of the fund and be payable out of it. But here we have no sale and no resulting fund belonging to the mortgagor to which the lien of the mortgage can be transferred. In Reed v. Fidelity Co., supra, there was no sale and no fund resulting therefrom. But the necessities of that case required that the land be divided into purparts of unequal value, and there resulted therefrom a sum of money, by way of owelty, due to the mortgagor, the lien of whose mortgage on his undivided interest had been divested by the decree. In that case it was held the lien of the mortgage was transferred to the fund due by way of owelty to the mortgagor; and although that owelty had been paid to the mortgagor, apparently in conformity with

the letter of the decree, the mortgagees successfully maintained an action of assumpsit against the allottee to recover the amount of the mortgage. Mr. JUSTICE TRUNKEY said: "Owelty is somewhat in the nature of purchase money for land, and the party who pays it, the purchaser. The paramount rights of tenants in common may compel conversion, and the mortgage becomes a lien on the proceeds of sale; or on the owelty, if no sale." In McCandless' Appeal, supra, it was held that the lien of a recognizance, given by an allottee to secure the payment of owelty to his cotenant, took precedence of earlier liens with which the undivided interest of the allottee had been incumbered. This conclusion, as pointed out by Mr. JUSTICE MERCUR, follows not only from the nature of the paramount rights of the cotenants whose interests in the land, in whole or in part, are represented by the owelty, but also from this further consideration, to wit: "There is no line of separation or division running through a purpart by which it can be divided to apportion liens." It is at this point that, as we view it, the exceptant encounters an insuperable difficulty.

We may here properly say we can perceive no ground on which the claimant may successfully invoke the application of the doctrine of subrogation. Subrogation has been defined to be a fiction called into existence for the purpose of effectuating an equity that could not otherwise be worked out. It is founded "in principles of equity and benevolence," but the doctrine can never be successfully invoked by a mere volunteer; to destroy vested legal rights; or where its application would defeat equal equities in another person: International Harvester Co. v. Tuscarora Twp., 43 Pa. Superior Ct. 410; Lack. Trust & Safe Deposit Co. v. Gomeringer, 236 Pa. 179. In the present case, if the appellant can succeed, he not only transferred the lien of his mortgage to a property not embraced within it, but gave it priority over liens that had been seated on that property—to the extent of the

undivided interest of the judgment debtor—long before his mortgage was created. He has no equity that we can discover to take the present fund with the result that these judgment creditors, or some of them, take nothing. He can find no aid therefore in any attempted application of the doctrine of subrogation.

He finally contends his claim may be worked out through some enlargement of the principle which controls where owelty money is due to the cotenant who created the incumbrance. He cannot well argue, in any aspect of the case, that the whole of the fund now for distribution, should be treated as owelty due to Thomas, his mortgagor. But he urges us to plow a furrow through the fund that will so split it, that there may be found enough on one side to pay his mortgage, such portion to be regarded as, in substance if not in form, owelty. He contends when the brother of his mortgage debtor took the Pittsburg property in severalty and thus uprooted his mortgage, he would have become indebted to the mortgagor in a sum sufficient to measure the value of what he had taken from the latter. Now because the allottee was able to pay without money, by permitting his brother to take in severalty property in Crafton, it is argued the value of the accretion thus made to what had been formerly the undivided interest of Thomas, and which alone had been bound by the lien of the judgments, should be regarded as owelty.

It seems to us there are three answers to such claim. We have already indicated the one in the excerpt quoted from the opinion of Mr. Justice Mercur, to wit; "There is no line of separation or division running through a purpart by which it can be divided to apportion liens." In the next place, if it were within the power of the court to establish such a line of demarcation, there is nothing presented in this record which would enable us to do so with accuracy. A single witness gave his opinion as to the value of the lot in Pittsburg. There was no appraisement of it by the master

or the court. The whole of that lot was combined with a portion of the Crafton property to make a single purpart which was valued and appraised at precisely the same sum as the other purpart, consisting of the remainder of the Crafton property. It would be impossible for any court, which proceeded along other lines than the suggestions of arbitrary power, to determine the precise value of what, the appellant argues, became land owelty. Lastly, Thomas, the judgment debtor, was the owner of the undivided one-half of all of the Crafton property. The judgments which were entered against him became liens on his undivided interest in all of that property. By virtue of the partition they lost their liens against the portion of the Crafton property which went into the purpart allotted to the cotenant of Thomas. If it be true—and this can only be surmised— that the estate of Thomas in severalty, in part of the Crafton property, is worth more than his undivided interest in all of it, again it would be impossible for any court to measure and adjust the value of what the judgment creditors lost and gained by the operation of the partition.

The case is an unusual one, and it may be agreed presents some hardships from the viewpoint of the appellant mortgagee. But even in such cases it is not wise for courts, in the administration of the law, to attempt to do what, if done at all, should be done by the legislature. It is the misfortune of the appellant that the property to which his lien was necessarily shifted was not sufficiently valuable to provide for it after satisfying the judgment liens that had previously attached. If it was sufficiently valuable, it is still more his misfortune that he did not see to it that the fund produced at the sheriff's sale was adequate. After a careful study of the question we are unable to discover any reversible error in the order appealed from.

The order or decree of distribution is affirmed.