## Calvano's Estate

*Joseph L. Hoffman*, for accountant.

CRUMRINE, P. J., March 22, 1939.—The fund here being distributed is the balance of the proceeds of a sale in partition.

Nick Calvano had an undivided one-third interest in the property partitioned and after the death of his wife, the original owner, on February 27, 1929, occupied the property continuously until about October 20, 1938, paying no rent to any of his cotenants on account of such occupancy.

About March 1, 1932, Nick Calvano purchased certain materials from the Donora Lumber Company for which he gave a judgment note in the sum of $128.90. Judgment was confessed on this note, was properly revived, and was a lien on the undivided interest of Nick Calvano at the time the property was sold. The amount now due is $179.94.

The trustee in his audit petition submits the question whether, on distribution, this judgment is entitled to priority in payment against the share of Nick Calvano or whether his distributive share should first be applied to the payment of his cotenants as rental for the property which he occupied.

Section 20 of the Orphans' Court Partition Act of June 7, 1917, P. L. 337, reads as follows:

"In case of partition of real estate now or hereafter held by two or more persons as tenants in common, where one or more of said tenants shall have been or shall hereafter be in possession of said real estate, the parties in possession shall have deducted from their distributive shares of said real estate the proportional part of the rental value thereof to which their cotenant or cotenants are entitled for the time such real estate shall have been in possession as aforesaid." This is a reënactment of that part of the Act of June 24, 1895, P. L. 237, sec. 1, insofar as it applies to partition.

The question is: Whose right has priority, on distribution, a judgment creditor or a cotenant with a valid claim for rent and occupancy?

A hurried but rather thorough examination of the cases shows no appellate decision in this State which directly decides the question.

In Lee v. Hamilton, 22 Dist. R. 75, 77, where most of the discussion is directed to the propriety of the Act of 1895, the cotenant was awarded "his share of the rent, regardless of the effect of the judgment", on the general ground that " 'the lien of a judgment is subject to all the equities which were held against the land in the hands of the judgment debtor at the time the judgment was rendered, and these will be protected by courts of equity as against the judgment lien, so that the latter may be confined to the interest remaining in the debtor after due recognition of the outstanding equities in their proper order.' "

While possibly this quotation may be good as a general expression of text-book law—as applied to the principle in controversy it certainly begs the question.

In Fletcher et al. v. Levenight et al., 44 Lanc. L. R. 589, the payment had already been made to the judgment creditor, and Judge Schaeffer remarked — apparently with some doubt—that "no question is raised as to the propriety of this award."

In Edmundson v. Stadtfeld et al., 69 Pitts. 545, it seems to have been conceded that the judgment lienor had priority.

Although not deciding the point in question, there is language used in some of the appellate court decisions which might be construed as applicable.

In Bingaman v. McCandless, 55 Pa. Superior Ct. 155, 159, where one of the questions was whether a mortgage given on his undivided interest by a cotenant was divested by a partition proceeding, it was said:

"The right of every one of a number of cotenants to have partition of the common property is superior or paramount to the right of any individual cotenant to affect it by the incumbrance of his undivided interest. *Every mortgage or judgment creditor of the individual cotenant must take his incumbrance subordinate to that paramount right and his incumbrance creates no obstacle to the working out of the partition with all of the incidents that may by law attach.*" (Italics supplied.)

This statement, while broad, is generally declaratory of the principle enunciated by the cases cited for it, beginning with Wright, etc., v. Vickers, Admr., etc., 81 Pa. 122 (1876), which decided that partition divested a mortgage given on an individual interest. See also Appeal of McCandless et al., Execs., 98 Pa. 489.

This is undoubtedly good law—that no act of the individual cotenant can create an obstacle to the partition —but to say that *all* equities existing among the cotenants, even though they amounted to no more than choses in action or unliquidated claims, extend to mortgagees and judgment creditors would be stretching the principle much further, and would be contrary to the general current of authority.

In 27 A. L. R. 237, the annotator says:

"It is generally held that a tenant in common has no lien against the share of his cotenant for rents collected or use and occupation, which he can assert to the prejudice of persons holding conveyances or liens on such share."

The reason given for most of the decisions cited is condensed in 7 R. C. L. 836 §32:

"It ought not to be held on principle that any lien or incumbrance arises in favor of one cotenant against the share or interest of another in the land for rents due. Such liens would be indefinite in amount, and undisclosed by public records, upon which third persons in dealing with the owners of property ordinarily have a right to rely."

This reasoning is logical and practical, but it must, of course, give way if the intention of the legislative enactment is to accord a priority to the cotenants.

At common law one tenant in common could not maintain an action of trespass against another except in case of actual ouster: 2 Sharswood's Blackstone's Commentaries 133; Watson v. Gregg, 10 Watts 289; nor could he require an accounting for mesne profits unless on an express promise: Norris v. Gould, 15 W. N. C. 187. This latter situation was mitigated by the statute of 4 Anne, c. 16, sec. 27, 4 Eng. Stat. at L. 205, 208, but in general the right of one cotenant to recover from another for mesne use and occupation of the common property, in any action, was of doubtful standing and difficult procurement until the Act of 1895, supra. This situation is fully discussed in Norris v. Gould, supra.

Even after the Act of 1895 was passed, it was received with considerable doubt: Stamm's Estate, 17 Dist. R. 863; Lee v. Hamilton, 22 Dist. R. 75. And the net result of the cases decided under it has been that its effect was to remove the disability existing at common law by reason of the peculiar relationship of the parties, with its theory that the possession of one was the possession of all. Under it, the courts have held that assumpsit is an appropriate remedy: Stoehr, Executrix, v. Stoehr, 70 Pitts. 80; that the six years' statute of limitation is applicable: Friedrich's Estate, 24 Dist. R. 275; and the usual rules of proof in personal actions prevail: Duggan v. Duggan, 291 Pa. 556. It is simply " 'a statute giv-

ing a party a mode of remedy for a wrong where he had none'. . . . It is inequitable to allow one co-tenant the use and occupation of premises belonging to himself and other co-tenants, and because of this the Act of 1895 was passed": Friedrich's Estate, supra.

But neither in the act itself nor in any case decided under it is there any intimation that the right of action conferred is different from any other ordinary personal action. Nor does it in any manner change the inherent qualities of a tenancy in common; as to that, the common-law conception—that there are no unities except the necessary one of possession—still maintains.

The provision for adjusting rents in partition proceedings is merely to avoid circuity—applying the common equity practice of disposing of the entire subject matter.

The principle involved in Wright, etc., v. Vickers, Admr., etc., supra, that no act of one cotenant can be allowed to interfere with the right to partition, inherent in every tenancy in common, is entirely different. It does not mean that other rights existing between tenants in common are peculiarly sacred, and to be treated as secret liens.

It is a well-settled principle in the construction of statutes that they are to be regarded in the light of existing and well-recognized principles. "For it is not to be presumed that the legislature intended to make any innovation upon the common law, further than the case absolutely required": Potter's Dwarris on Statutes and Constitutions 185. And in this question are involved principles of great moment, the keeping of property freely alienable and the law's abhorrence of secret liens. If the purchaser of an undivided interest or the creditor of a cotenant is subjected to the risks of undisclosed and unliquidated claims which, in many cases, he has no means of ascertaining, both principles would be sadly violated. We must then conclude that, in framing the Act of 1895, the legislature intended no more than it expressed, the supplying of a right of action where previously there had

been, at best, a very imperfect one, and that it was not intended to vest this new remedy with any of the qualities of a lien, which would prejudice a third-party purchaser or creditor.

In the case before us, there is only a small amount involved, and the parties interested in the question did not even appear. The immediate question could also be disposed of on the fact that the proceeds of the judgment in question went for materials to be used in improving the joint property. But owing to the paucity of definite decisions on this question of priority, I felt that the position of this court should be stated. For the reasons given above I find that the judgment entered against Nicola Calvano has priority in distribution over the claims of cotenants for use and occupation.

A decree of distribution in accordance with the foregoing is filed herewith.