# Long *against* Long.

.Upon an amicable partition of lands between tenants in common, or a sale founded upon such partition, by which money is payable to one of the tenants in common, an action may be maintained by him for its recovery against another tenant in common, who took or purchased the land, with notice to a terre tenant, to whom the land had been subsequently conveyed.

In such an action, the defendant, who took or purchased the land, would not be a competent witness to establish the liability of the terre tenant.

WRIT of error to the district court of the city and county of *Lancaster.* *Bradford,* president.

This was. an action of debt by *Abraham Long* against *Benjamin Long,* with notice to *Conrad Zeigler* terre tenant, which arose out of the following facts.

*Harman Long* died seised of a large real estate, leaving a paper which purported to be his will, and about the validity of which his heirs at law disputed. This resulted in a written agreement between them all, some of them being of age, others minors who were represented by guardians, and others married daughters, with whom their husbands joined, by the provisions of which agreement a valuation and partition of the whole estate was to be made by certain persons appointed for that purpose, and the heirs were to take or refuse to take at such valuation; if any part should not be taken by any one, a sale of it was provided for. The partition and valuation was made, one of the parts all refused to take; it was sold, and purchased by *Benjamin Long* the defendant, and of the purchase money there was due and payable to *Abraham Long* the plaintiff 760 dollars. This land was afterwards sold by the sheriff as the property of *Benjamin Long,* and purchased by *Conrad Zeigler.* Notice was given at the time of sale that it was selling subject to this claim of *Abraham Long,* and it was struck down to *Conrad Zeigler* at 5410 dollars, of which he retained 800 dollars to meet this claim of *Abraham Long,* which sum was still in his hands.

The plaintiff offered to establish these facts by the testimony of several witnesses, but the court having been of opinion, that the action could not be maintained, rejected all the evidence, which was the subject of several bills of exception.

*Benjamin Long* himself was offered as a witness, and rejected on the same ground, and also that of incompetency. A verdict and judgment were rendered for the defendant.

*Wright,* for plaintiff in error.
*Hopkins,* contra.
2 ι

[Long v. Long.]

The opinion of the Court was delivered by

KENNEDY, J.—This is an action of debt, brought by *Samuel Long*, for his own use, in the name of *Abraham Long*, against *Benjamin Long*, with notice to *Conrad Zeigler*. The bills of exception, and the errors assigned, raise two questions.

1. Whether the action can be maintained so as to entitle the plaintiff to a judgment, to be levied out of the land in the possession of *Conrad Zeigler*, which he bought at sheriff's sale as the property of *Benjamin Long*, the defendant in this action, subject to the payment of the debt herein claimed.

2. Whether *Benjamin Long*, the defendant, was a competent witness for the plaintiff, on the trial of the issue between him and *Conrad Zeigler*, the terre tenant.

From the nature of the plaintiff's claim, as set out by himself, it was certainly necessary to prove, that the debt was due, and owing to *Abraham Long* by *Benjamin Long*, under a valid and binding contract ; and that it was such as created a lien upon the land for the payment of it, of which land *Zeigler* had become the terre tenant ; and that he had full notice of the lien at the time he bought. We think, that the evidence set forth in the several bills of exception, which have been made the ground of the errors assigned in this case, tended to show all this, and, therefore, ought to have been received. Why the court below rejected the testimony, does not distinctly appear upon the record ; but it is said, that it was because they thought that this action could not be supported for the purpose of making the land in the hands of *Zeigler* liable for the payment of the debt. If such was the opinion entertained by the court below, we think it was erroneous. Taking all for true, which the plaintiff offered to prove, there can be no doubt, but that the debt claimed, was justly owing to him by *Benjamin Long* ; and that he had, according to the terms of the contract, a double security for the payment of it : first in the personal responsibility of *Benjamin Long* ; and next, in a lien upon the land purchased by him. It has, however, been objected to the arrangement or agreement out of which this debt has arisen, that *Martin* and *Abraham Long*, two of the persons interested in the lands which were the subject matter of the arrangement, which was an agreement of compromise of family disputes and quarrels, and therefore much to be favoured, were minors at the time ; and that, therefore, they were incapable, either by themselves or their guardians, of becoming parties to it, and so to dispose of their rights in the land. Admitting that these minors were incapable of binding themselves, or of being bound by their guardians for such purpose, still the contract, for reasons which will appear in the sequel, was not void, but at most only voidable ; and the other contracting parties who were of full age were absolutely bound by it, and could only be released by the consent of all, or by those infants taking advantage of their infancy, and making it a plea against the fulfilment of the agreement upon their part, when they came of full age. But instead

[Long v. Long.]

of doing this, the evidence offered by the plaintiff, and rejected by the court, was, to prove, *inter alia,* that these infants, after their arrival at full age, had complied with, and performed the agreement in every respect ; and that *Abraham,* who is the nominal plaintiff in this case, after he was of full age, and before the bringing of this suit, executed and tendered a release of his right and interest to and in the land, to *Zeigler* the terre tenant. This was all that was wanting to make his title to the land, which he then had and still has in possession, perfect. And if it be true, as the plaintiff further offered to prove, that *Zeigler* bought the land, expressly subject to the payment of this money, upon *Abraham's* effectually releasing his right and title to it ; why should *Zeigler* not either pay the money, or suffer the land to be sold for it ? Upon every principle of honour and justice, he ought to feel himself bound to do so, rather than suffer *Benjamin Long* to lose any thing on account of it.

If the right of the plaintiff to demand and recover the money claimed in this suit were to be made manifest, as the plaintiff by his proofs proposed, he most unquestionably ought to have a remedy for the recovery of it. For it is a rule of our law, that wherever it confers a right, it will afford a remedy by an action of some kind ; and the right being once clearly established, it belongs to the courts to adopt a suitable remedy. 3 *Black. Com.* 123 ; 1 *Salk.* 21 ; 6 *Mad.* 54 ; *Per* Lord *Kenyon,* Chief Justice, 1 *East* 226 ; 1 *Chitty, Pl.* 83.

The action adopted by the plaintiff as a remedy here is debt ; and is it not, I would ask, a suitable one ? It is *money* that is claimed to be due, and sought to be recovered in this case ; and *debt* is a more extensive remedy for the recovery of money than *assumpsit,* or perhaps any other form of action ; for it lies to recover money due upon legal liabilities, or upon simple contracts, express or implied, whether verbal or written ; and upon contracts under seal or of record ; and on statutes by a party grieved, or a common informer, whenever the demand is for a sum certain, or is capable of being reduced to a certainty, &c. 1 *Chitty, Pl.* 101.

Where an annuity or rent is charged upon lands of the testator by his will, after his death an action of debt will lie in favour of the legatee to recover it, as often as it shall be in arrear and unpaid, against those who shall have succeeded to the possession of the lands, and have become the pernors of the profits thereof. *Dupa* v. *Mayo,* 1 *Saund.* 282. The liability of the pernors of the profits in this case does not arise *ex contractu,* but is cast upon them by operation of law upon their acts and conduct, in having taken possession of the land and received the profits of it, which were the fund appropriated by the testator in his will for the payment of the annuity or the rent. So a legacy consisting of a gross sum of money, given and charged by a testator upon his land lying in this state, may be recovered in an action of debt, to be brought against the terre tenant with notice to the executors. The judgment, however, to be rendered in such case would be for the amount of the legacy, to be

[Long v. Long.]

levied only out of the land upon which it was charged. An action of ejectment was at one time held to lie by some of our courts in this state, and resorted to occasionally, as a remedy by legatees whose legacies were charged by the testators upon the real estate. But of late, the action of debt seems to be the remedy that has been finally adopted, and that is now considered by this court as the most appropriate to promote the intention of the testator, and to secure to the legatee his right. This has been devised and adopted from necessity, in order to prevent a failure of justice.

Upon similar principles, and from a like necessity, we think, then, that if the plaintiff here shall make out by proof the facts of his case as he proposed, to the conviction of the jury, that, in law, he would be entitled to a judgment for the amount of his debt, to be levied out of the land upon which it was charged, and subject to which *Zeigler* purchased.

It was contended upon the argument of the case, that the lien which is claimed to exist upon the land in the possession of *Zeigler,* according to the evidence that was offered to be given of it, originated in, and grew out of a parol contract; that such a contract is altogether insufficient in law to create a lien upon real estate. That it would not only be contrary to the statute against frauds and perjuries, but repugnant to the whole policy of our law, which reprobates all liens upon lands or real estate which cannot be placed upon public record.

Whether a lien can in any case be created by a parol contract upon real estate or not, is a question, as I conceive, not altogether necessary to be decided here. For the agreement between the parties for the partition, valuation and disposition of the estate, was made and reduced to writing and signed by them. And again, after the agreement had been carried into execution, and the estate had all been taken and disposed of by the parties under it, it was proposed to be proved, that the whole had been ratified and confirmed by releases and instruments of writing executed by the parties respectively for that purpose. More than this, I think, could not have been required to take the case out of the statute of frauds. As it regards the object of the agreement, whether viewed as a compromise of unhappy disputes and quarrels which had arisen between members of the same family, or as the severance of interests in an estate that was held in coparcenary, it not only comports with the policy of the law to promote it, but is entitled to its greatest favour. In all cases the law most willingly lends its aid when asked for, to make partition of estates held in joint tenancy or in common, and will compel a division of the property, so that it may be held in severalty. If, however, it will not admit of a division, and the object cannot be accomplished in that way, it will cause an appraisement to be made, and will assign it to one of the parties, he paying to the others their respective and equal proportions of the valuation money. Wherever parties, then, have done amicably what the law would have com-

[Long v. Long.]

pelled, it will, if possible, be doubly binding upon them.    It will even bind an infant; as if he make *equal* partition, pay rent that is due, or admit a copyholder upon a surrender.    3 *Burr. Rep.* 1801.    Indeed, it is a general rule, that whatsoever an infant is bound to do by law, the same shall bind him, albeit he doth it without suit of law.    *Co. Lit.* 172 *a;* 9 *Co.* 85 *b.*    Hence, as the agreement between the parties, out of which the claim in this suit has grown, was made for the purpose of dividing and parting an estate which before was held by them in common, so that each of them might get and hold his interest therein in severalty; it was to do substantially nothing more than that which the law would have enforced : I have, therefore, already said it was not *void* as to the parties to it, who were infants. It has been held in this state, that a parol partition between tenants in common, made by marking a line of division on the ground, and followed by a corresponding separate possession, is good, notwithstanding the statute against frauds.    *Ebert* v. *Wood,* 1 *Binn.* 216. And if, in order to equalize the partition in such case, one of the parties had agreed to pay to the other a sum certain in money, or a certain rent yearly for ever out of his part, and that it should be a charge thereon, I am inclined to believe that a lien or charge would be thereby created upon the whole of the land taken under such partition, by the party agreeing to pay.    I also believe that the law would make the money or rent a lien or charge upon the land, without any express agreement between the parties to that effect.    In this state, our statute regulating the descent of real estate, passes it upon the death of the party, dying seised and intestate, to his children equally, to hold it as tenants in common, and may be considered as placing them more upon the footing with coparceners in England, than any other description of tenants of real estate.    Now a parol partition between coparceners is good, and a rent may be *reserved* or *granted* without deed for equality of partition *out of the land descended;* and the rent so reserved or granted is distrainable of common right. *Lit. sec.* 252, 253 *; Co. Lit.* 169 *b ;* 16 *Vin. Abr. tit. Partition,* G. *Owelty,* 224.    And if the rent be granted *generally* (without saying out of what land) for owelty of partition, *pro residuo terræ,* it shall be intended out of the *purparty of her who grants it.* · · *Co. Lit.* 169 *b.*    The rent in this case is not a rent seck, but a rent *charge,* and the *purparty* of her who grants it shall be chargeable with a distress for the payment of it, as often as it shall become payable, and suffered to fall in arrear.    And although a *query* seems to be added by *Sergeant Hawkins* as to the validity of such parol partition since the passage of 29th *Car.,* still I apprehend if it were carried into full execution, as in the case of *Ebert* v. *Wood,* already cited, that would be sufficient to take it out of our statute against frauds, or even in England.    See *Ireland* v. *Rittle et al.* 1 *Atk.* 542, where a parol partition, after a possession had been taken and holden under it, was held good and confirmed.    See also 1 *Vern.* 472.    Upon the same principle, I take it, a gross sum of money may be agreed to be paid in

[Long v. Long.]

making a parol partition by the one to the other for owelty of partition, and may be charged upon the *purparty* of the one agreeing to pay. See *Clarendon* v. *Hornby*, 1 *P. Wms* 447. And in addition, I may also observe, that our acts of assembly passed, on the subject of partition, the 11th of April 1799, and the 7th of April 1807, have, in accordance with this principle, made the valuation money where the estate will not admit of division, or the money allowed for owelty where it shall be divided into parts of unequal value, *liens* upon the *whole of that part of the estate* taken by the party who is decreed to pay the money.

As this cause must go back to the court below again for trial, it is proper to advise the plaintiff that we consider that he was premature in going on to trial of the issue with *Zeigler*, before he obtained a judgment against *Benjamin Long*, or a plea from him, upon which he could have joined issue, and have proceeded to a trial against both by the same jury. By pursuing this course, the plaintiff will have to establish the existence of his debt against the party with whom it was actually first contracted, and who may therefore be reasonably supposed more competent to defend against it if it be unjust, or has been by him in any way satisfied; but if the existence of the debt be fully proved, then it will be for *Conrad Zeigler* to show cause, if any he has, why it should not be levied out of the land of which he claims to be the terre tenant.

The next question is, was *Benjamin Long*, the defendant, a competent witness for the plaintiff? We think he was not. For although he was a party on the record to the suit, and was called to give evidence against himself, yet, if he volunteered to do so, I do not see any sound principle upon which he could be rejected for either of of those circumstances; but his testimony was offered not merely to establish his own liability to pay the debt, but to show that the land which had become the property of *Zeigler* was liable also for the payment of it. It is very obvious, then, as the plaintiff in his declaration has stated the inability of *Benjamin Long* to pay this debt, and that for that reason he wishes to have payment of it out of the land in the hands of *Zeigler*, and therefore has made him a party to this proceeding, that *Benjamin Long* ought not to be received as a witness for the plaintiff under this view of the case, because his evidence was offered to throw the payment of the debt which he owed himself, and for which he was personally responsible to the plaintiff, upon the property of *Zeigler*, to whom he was in no wise answerable, and thus relieve himself entirely from the payment of it.

The judgment of the court below is reversed, and a *venire facias de novo* awarded.