Acheson, J.
The fund for distribution arises from the sale of certain land of the bankrupt, H. H. Null, in Westmoreland county, Pennsylvania, which, under an order of this court, was sold, divested of liens. The register reports that the heirs of Henry Null, deceased, had the first lien against the land, and he appropriates thereto the sum of $1,485.75. To this appropriation Jesse Pries, a judgment creditor of the bankrupt, has filed exceptions.
This land is part of the real estate of which the bankrupt’s father, Henry Null, died seized, intestate. Subsequently, on September 11, 1849, the widow and heirs of the decedent made an amicable partition of his real estate by an instrument of writing, executed under their hands and Seals, and duly recorded in Westmoreland county on June 2, 1851-By this partition the land now in question was allotted to H. H. Null, the bankrupt, at the agreed valuation of $5,209.50. *72 Other portions of the real estate were allotted to other of the heirs at agreed values, the valuation of all the purparts amounting to $11,268.25. After reciting the valuation and allotments, the partition agreement contains the following clause:
“Out of this, one-third remains in the land; interest, annually, to be paid to Elizabeth, the widow, and principal to he paid to the heirs of deceased, at her death — $3,756.08.” The partition agreement also contains the following clauses: “The heirs also agree to execute deeds to Henry H. Null, Andrew J. Null, Francis M. Null and William Ruff, for the purparts taken by them.” * * *
*******
* * * “H. H. Null, Andrew J. Null, F. M. Null and William Ruff to give mortgages to the other heirs for the one-third which remains in the land, which is to be paid on the death of the widow; the interest on same to be paid annually to said widow during her life.”
On the day of the date of the partition agreement, September 11, 1849, the other heirs executed to H. H. Null a deed for his said purpart, but it seems he never executed the mortgage as required by the agreement. The deed to H. H. Null, which was recorded November 3, 1865, contains this recital: “Being the mansion farm of the late Henry Null, deceased, who died seized thereof; and in the partition of the real estate of said deceased to and among his heirs, the trust was agreed to be taken at a price fixed upon by all the parties hereto, by Henry H. Null, whose title to the same is hereby confirmed and assured to the same.”
Elizabeth, the widow of Henry Null, died before the commencement of the proceedings in bankruptcy in this case, viz., on January 9, 1873.
Such being the facts of the case, was the register right in his appropriation in favor of the heirs of Henry Null, deceased?
It is indisputably settled that a lien upon real estate may be created by an instrument under seal, duly recorded. Dexter’s Appeal, 81 Pa. St. R. 403. Here, beyond all question, *73 the partition agreement of September 11,1849, does expressly charge the purpart taken by H. H. Null with one-third of the agreed valuation. “This one-third remains in the land,” is the language of the agreement. Surely these are apt words to create a charge or lien upon the land. The agreement was recorded long prior to the entry of the judgment of Jesse Pries. He had, therefore, constructive, if not actual, notice of the prior encumbrance.
Was the lien intended to be created by the partition agreement defeated by the deed from the other heirs of Henry Null, deceased, to H. H. Null? Certainly not; for the agreement itself contemplated and provided for that deed. The deed bears even date with the agreement, and recites the partition. It is part and parcel of the partition, and cannot be used to defeat the manifest and expressed intention of the parties. This amicable partition is declared in the agreement to be made “for the purpose of avoiding difficulties and costs in selling said estate,” It was in lieu of proceedings in partition in the orphan’s court, which any of the parties might have instituted; and in respect to the one-third of the valuation money the parties merely adopted the provisions of section 41 of the act of March 20, 1832, (Purdon, 437, pi. 158,) which charges upon the premises the principal of the widow’s dower, and directs that the interest be paid her annually, and the principal at her death to the parties thereunto legally entitled. Say the court, in Long v. Long, 1 Watts, 268: “Wherever parties, then, have done amicably what the law would have compelled, it will, if possible, be doubly binding upon them.”
A deed is not always a merger of prior articles of agreement. In many cases it is to be considered a part performance only. Selden v. Williams, 9 Watts, 9. If the articles contain a provision for something more than the execution of a deed, it may remain in full force after a conveyance has been executed and accepted. Barnitz v. Smith, 1 Watts & Serg. 145.
It is, however, contended that the partition agreement provides how the one-third of the valuation money was to be secured, viz.: by mortgage; and that, as the deed was deliv *74 ered without exacting then or afterwards the stipulated security, the lien in favor of the heirs was lost. But the very clause which provides for a mortgage contains this significant language : “Bor the one-third which remains in the land, which is to be paid on the death of the widow; the interest on the same to be paid annually to said widow during her life. ” The purpose of the mortgage was to afford additional and cumulative remedies to enforce payment. Episcopal Academy v. Freize, 2 Watts, 16.
In proceedings in partition a recognizance or mortgage given for the principal of the widow’s dower is but collateral; the lien is independent of such security, being created by the law itself. Hise v. Geiger, 7 Watts & Serg. 273; De Haven v. Bartholomew, 57 Pa. St. R. 126. This principle is applicable to the present controversy; for here the agreement of the parties, which is the law of the case, created a lien independent of the contemplated mortgage.
And now, to-wit, April 12, 1880, the exceptions to the register’s report are overruled and the report confirmed absolutely.