at the same time encourage official carelessness, of which there is quite enough already.

The act of June 16th 1836, prescribing the manner in which judicial sales of real estate shall be evidenced, requires that, " The officer making sale of any real estate under execution . . . shall make return thereof, indorsed on or annexed to such writ, and give the buyer a deed duly executed and acknowledged ": Purdon, 658, pl. 119. In thus requiring that the return shall not only be in writing, but also indorsed on or annexed to the writ, and that the sale shall be further evidenced by a deed to the purchaser, it was surely not contemplated that the return so made might afterwards be explained by parol testimony to mean something else. The act of April 21st 1846 makes ample provision for the correction or amendment of defective or informal returns: Purdon 659, pl. 130. After the trial of this case, the return in question was amended, in the regular and orderly way, at the instance of the defendant; but that cannot affect the question under consideration. It was not amended at the time of the re-sale. The state of the record, as it then stood, was such as to admonish bidders that the quality of the title then offered was inferior to that which would have passed by the first sale, and consequently the property would probably bring less than it did at the first sale.

For these and other reasons that might be added, we are of opinion that the testimony offered by the plaintiff was rightly excluded.

Judgment affirmed.

Mercur, J., dissents, as there was amply sufficient to amend by, and the parol evidence should have been received.

## Appeal of McCandless et al., Executors.

Where upon the partition of a tract of land owelty is awarded, the same constitutes a lien upon the purpart on which it is charged, prior to that of a mortgage of his undivided interest given by the tenant of such purpart before the partition.

October 7th 1881. Before Sharswood, C. J., Mercur, Paxson, Trunkey, Sterrett, and Green, JJ. Gordon, J., absent.

Certiorari to and appeal from the Court of Common Pleas No. 1, of *Allegheny county :* Of October and November Term 1881, No. 183.

Appeal by Wilson McCandless et al., executors of Robert

W. Mackey, deceased, from a decree of said court dismissing their exceptions to the report of an auditor distributing the proceeds of a sheriff's sale, and confirming the report.

The facts material to this case were as follows:—John Adams died December 3d 1872, having by his will dated January 25th 1870, devised his real estate to his widow for life, and he directed his executors to sell the same upon her death and divide the proceeds equally among his seven children, all of whom survived him, subject as to the share of his daughter Ann Eliza Mackey, to certain deductions. Mrs. Adams, the testator's widow, released her life estate in the land, and the seven children, being of full age, elected in writing to take their interest as land instead of the proceeds thereof.

By mortgage dated October 8th 1875, the said Ann Eliza Mackey (her husband, William H. Mackey, joining) mortgaged her undivided interest in the whole tract of which her father died seised, to Robert W. Mackey, for $2,000.

Subsequently proceedings in partition were had, wherein the interest of Mrs. Ann Eliza Mackey was fixed at $5,923.05. Equal partition being impracticable, the land was divided into seven purparts of unequal value; purpart No. 6, valued at $9,480, was allotted to Ann Eliza Mackey, charged with $3,556.95 for owelty of partition.

Subsequently, in 1880, the mortgage of Ann Eliza Mackey and her husband to Robert W. Mackey for $2,000, was foreclosed by scire facias, and the property and estate bound thereby was sold at sheriff's sale for $1,600. The sheriff made a special return, awarding the entire fund, after payment of the costs, to Robert W. Mackey, on account of his mortgage. Exceptions being filed to the return by one of the parties entitled to owelty of partition, the matter was referred to an auditor (James C. Doty, Esq.), who reported distribution of the fund to the several parties entitled to owelty of partition, pro rata, on the ground that the lien of such owelty on the purpart acquired by Ann Eliza Mackey was prior to the lien of her said mortgage of her undivided interest. The said mortgage was not reached in the distribution.

To this report Robert W. Mackey's executors filed exceptions, which were dismissed by the court, whereupon they took this appeal, assigning for error, inter alia, the dismissal of their exceptions and the confirmation of the report.

*G. W. Guthrie*, for the appellants.—When one of several co-tenants mortgages his undivided interest, and a partition is subsequently had, a distinction should be observed between the case of equal partition, and that of an unequal

partition, where the co-tenant, the mortgagor, elects to take a purpart greater in value than his share, charged with owelty. In the former case the lien of the mortgage attaches, as a first lien, to the mortgagor's purpart in severalty. In the latter case, I contend, the mortgage will continue to be the first lien on such an interest in the augmented purpart as will represent the mortgagor's equal share, and a second lien on the excess; and the owelty, which represents the purchase money of the excess parted with by the other co-tenants, will be a first lien on such excess, and a second lien on the original share. A sale under the mortgage passes only the original interest of the mortgagor, and of course the mortgage is entitled to be first satisfied out of the proceeds. But by the rule adopted by the court below the effect of an unequal partition is to convert the first lien of the mortgage on the original interest into a second lien on the whole acquired interest, subject to the owelty. As the mortgagee cannot be heard in the partition, the result is that, without a day in court, his first lien on the mortgagor's original interest is taken away from him for the benefit of the parties credited with owelty in a partition had subsequent to the date of the mortgage. It is argued that the mortgagee of an undivided interest takes subject to the co-tenant's right to a partition. True, but this right is to enforce a fair and equal partition of the land, or, if that cannot be made, to have it sold at public sale. No co-tenant can *compel* another to accept an augmented purpart at a valuation; this is a privilege which one or more co-tenants may elect to accept; but, if such co-tenant has previously mortgaged his undivided interest, he has deprived himself of such privilege, unless his incumbrancer be secured. It is said a sale in partition would divest the mortgage: true, but such sale is a public sale at which the mortgagee may bid, and the lien is merely transferred to the fund; while the mortgagee can in no way protect himself against the selection by his mortgagor of an augmented purpart.

If one of two co-tenants mortgages his undivided interest and then purchases his co-tenant's interest, the purchase money would not be a first lien on the whole tract. Yet this is the equivalent of a selection by the mortgagor of an augmented purpart at a valuation subject to owelty. If each of two co-tenants mortgage his undivided interest, and in a subsequent partition A. takes the whole land at a valuation, the mortgage given by B. would, according to the doctrine of the court below, be converted practically into a first lien on the whole land, and slipped under the other mortgage, as the owelty charged would be first applied to it and stand for its use. The anomalous result is reached of the lien of a first mortgage being opened up,

not only to let in a prior lien, but also to become a second lien on an after-acquired interest! But how? Land cannot pass as appurtenant to land; nor by virtue of warranty, nor by any doctrine of conversion or substitution. If the owelty be paid, the result would be to give the mortgagee a better security than he had before the partition, which is equally anomalous. There is no precedent in point, but Randell *v.* Mallett, 14 Me. 51, is analogous in principle in favor of our contention.

*Slagle* (with him *John Barton, Whitesell & Son,* and *Wiley*), for the appellees.—A mortgagee of the undivided interest of a co-tenant takes subject to partition, with all its incidents, one of which is the right of the mortgagor take a purpart greater than his share, on the whole of which purpart owelty will be charged as a first lien: Cubbage *v.* Nesmith, 3 Watts 314; Allen *v.* Reesor, 16 S. & R. 10.   The appellant claims that a sale under the mortgage passes only the mortgagor's first estate, leaving the second still in the mortgagor subject to the owelty. But the purpart would then be held in common, undivided and indivisible, unless by some accident both titles should become united in the same person.   The tenant entitled to owelty would have a lien on an uncertain interest, and if such interest were sold on the lien, the purchaser—whether the tenant or a stranger—would hold in common, and "partition" would be defeated.   It is the right of partitioners to acquire their purpart in severalty.   Where the purparts are unequal the interest represented by owelty is converted into personalty, and is a fixed lien on the entire purpart; and one co-tenant cannot by mortgaging his interest or by any other act limit or take away the rights of the others: Diermond *v.* Robinson, 2 Yeates 324; Bavington *v.* Clarke, 2 P. & W. 115; Long's Appeal, 27 P. F. Smith 151; Wright *v.* Vickers, 31 P. F. Smith 122.   The lien of the owelty relates back to the inception of the co-tenancy, and the owelty is assumed to be the exact value of the accession to the original interest; therefore the value of the entire purpart subject to the owelty is the exact equivalent of the interest mortgaged.   If the mortgagee had brought ejectment or foreclosed his mortgage before partition, and bought in the mortgagor's undivided interest he would have held it subject to partition, and subject to the lien of owelty that might be charged on his purpart.   He can be in no better position by waiting until after partition to foreclose.   The allotment of a purpart in partition is not like the acquisition of a new and independent interest, as was the case in Randell *v.* Mallett, cited by the other side.   The mortgagee here, after partition, had a second lien

on the entire purpart; a sheriff's sale under his mortgage passed the entire estate, and the proceeds were properly applied in satisfaction of the owelty which was the first lien : Riddle & Pennock's Appeal, 1 Wright 177.

Mr. Justice MERCUR delivered the opinion of the court, October 31st 1881.

Neither a judgment nor a mortgage lien against one tenant in common prevents a partition, either at his instance or at that of any other of the tenants. Bavington v. Clarke, 2 P. & W. 115. The mortgagee of an interest in an undivided estate, is not entitled to be made a party to a proceeding in partition : Long's Appeal, 27 P. F. Smith, 151. He has an incumbrance only on the land : but no estate in it. He has no right whereby he can elect to take or to refuse a purpart, nor can he give security for owelty : Id. The primary object of partition is to divide the land among the tenants according to their respective shares therein. If such a partition is not practicable without prejudice to the whole, then only, should it be partitioned into purparts of unequal value. In case of a lien on the interest of a co-tenant to whom a purpart is allotted in severalty, the lien follows the separation and attaches only to the estate so taken, but is discharged as to the other purparts : Jackson v. Pierce, 10 Johns. 414; Bavington v. Clarke, supra; Long's Appeal, supra; Wright v. Vickers' Adm'r, 31 P. F. Smith 122.

The rights of tenants in common to make partition and to enjoy all the incidents connected therewith, are paramount to the rights of a lien creditor against any one of the tenants. If necessary to effect the legitimate purpose of partition, such a lien must yield some of its former binding force, and may even be wholly divested. Hence, notwithstanding the Act of 23d March 1867 declares that the lien of a first mortgage shall not be destroyed or in any way affected " by any judicial or other sale whatsoever," yet where after the commencement of proceedings in partition one of the co-tenants executed a first mortgage on his undivided interest, and the proceedings in partition resulted in a sale by the sheriff, it was held that the lien of the mortgage was thereby divested : Wright v. Vickers' Adm'r, supra. The case was not ruled on the ground that the mortgage was executed during the pendency of the proceedings in partition; but on the broader ground of the paramount rights of tenants in common to make partition and to enjoy all the incidents flowing therefrom. Section 38 of the Act of 29th March 1832, Pur. Dig. 436, pl. 150, provides in case equal partition in value cannot be made, and the court orders the purparts to those entitled thereto, it shall award them "subject to

the payment of such sum or sums of money as shall be necessary to equalize the value of said purparts according to the said appraisement thereof." The purpart of which the proceeds are now in contention, was so allotted "subject to the payment as owelty in partition" of sums sufficient to equalize the valuation. The lien of the recognizance then attached to the whole estate thus taken: Long *v.* Long, 1 Watts 265; Cubbage *v.* Nesmith, 3 Id. 314.

Liens for owelty of partition in the Orphans' Court in several respects stand on a different footing from liens of judgments in the Common Pleas. The former are in the line of title, and must be looked for in the proceedings of partition; liens in the latter court are outside of the line of title. A judgment docket is required to be kept in the Common Pleas for the information of subsequent lien creditors' and purchasers. None is required in the Orphans' Court. To ascertain in regard to a lien there, the proceedings in partition must be examined: Riddle & Pennock's Appeal, 1 Wright 177.

A purpart taken in severalty is allotted as an entirety. Whether the tenant's previous interest in the whole was large or small it matters not when he takes a purpart charged with owelty. He takes it as a whole. The recognizance to secure the payment thereof attaches to the whole. Why shall it not become the first lien thereon? A co-tenant for whose benefit the recognizance is taken, may be divested of his whole estate in all the land partitioned. His only security for payment is the recognizance. There is no line of separation or division running through a purpart by which it can be divided to apportion liens.

Presumably, the tenant thus taking acquires an estate in land of a value as much greater than his previous estate, as the amount of the owelty is, charged thereon. Hence, although a previous lien on an undivided interest may, in form, be displaced by the lien of the owelty in partition, yet the effect is more imaginary than real. It will practically bind land of a value equal to that on which it was a lien before partition. The partition has added to the value of the estate of the tenant a sum equal to the amount of the owelty charged thereon.

Conceding, however, that a second lien is not as desirable as a first one, yet when a person obtains a lien against the estate of a tenant in common, he assumes that risk. He knows the estate is subject to partition and all its incidents. He cannot impair any of the rights of the co-tenants. Their rights are superior to the rights of a lien creditor of one tenant. Such a lien will not deprive them of any right incident to a partition, that they might otherwise have enjoyed.

The case of Randell *v.* Mallett, 14 Maine 51, is not applicable

to the present case. That was not a partition subject to owelty charged on a purpart. The lien there in contention was not in the line of the title; but merely an incumbrance on the land. It was therefore correctly held that it was not in the power of the mortgagor, by a sale of part of the land, and subsequent partition, to extinguish the lien on the parts sold, without the consent of the mortgagees. We have thus considered the only question urged on the argument, and discover no error in the record.

> Decree affirmed, and appeal dismissed at the costs of the appellant.