**EASTMAN v SOHL et**

Ohio Appeals, 2nd Dist, Franklin Co.

No. 3271. Decided Nov. 25, 1940.

Eagleson & Eagleson, Columbus, for plaintiff, Helen Eastman.

Ralph Henney, Columbus, for defendant, Curtis Sohl.

Wilson & Rector, Columbus, for defendant, F. Stanley Crooks.

T. J. Keating, Columbus, for defendant, Equitable Life Assur. Co.

Walter R. Snider, Columbus, for defendant, Theta Kappa Phi Fraternity.

Henry A. Reinhard, Columbus, for defendants, Morris Clevenger and B. & A. Paint Co.

R. R. Walcutt and MacLee Henney, Columbus, for defendants, Anna Cunningham and Russell Wirtz.

McCleary & Madden, Columbus, for defendant, Blanche Sohl.

## OPINION

By GEIGER, J.

This is an appeal from the Court of Common Pleas on law. The action was begun in that Court by the filing of a petition by Helen Sohl Eastman against her brother, Curtis Sohl, both individually and as an executor of the estate of her father, Calvin, and of her mother, Cora Sohl, and various lienholders.

It is asserted that Calvin Sohl was seized in fee simple of certain described real estate, and died testate on the 14th of November, 1930, leaving Cora, now deceased, his widow, and the plaintiff, Helen Sohl Eastman, and the defendant. Curtis Sohl, his only heir at law; that Item II of the will of Calvin · Sohl devised and bequeathed to his wife, Cora, all his estate "so long as she remains my widow". In the event of her remarriage it was provided she should receive such portion of his estate as is provided by law, and the remainder shall vest in and be divided equally between the two children.

It is alleged that Cora elected to take the provisions, did · not remarry and died testate February 5, 1939; that Curtis was executor of both the estate of his father and of his mother. It is alleged that in 1930 an application was filed in the Probate Court by Curtis and Cora, executor and executrix of the estate of Calvin, for an order authorizing them to distribute in kind to Curtis 1388 shares of the common stock of the Cities Service Company belonging to the estate. All parties interested consented and the distribution was made; that at the time the stock was received it had a market value of about $20,000.00, and in that amount it is chargeable to Curtis Sohl in the division of the estate; that at the present time all the property remaining in the estate of Calvin does not have a value in excess of the value distributed to Curtis, and that by virtue thereof the plaintiff, under the will of Calvin, is seized in fee of the entire interest in the real estate; that the personal property is sufficient to pay the claims against the estate. She sets up the fact that certain defendants are lienholders, and prays for partition, and that the Court determine her rights and those of her brother, and that the interests in said premises may be set off in severalty.

Numerous motions were filed and disposed of and the lienholders by

cross-petition asserted claims to the property by virtue of mortgages and judgments.

A receiver was appointed and the plaintiff replied to the sevaral cross-petitions in the main denying the claims asserted. The answer of Curtis Sohl admits certain allegations of the petition, among them, the order of the Probate Court authorizing himself and his mother as executors to distribute in kind to him the shares of common stock in the Cities Service Company at the then market value of approximately $20,000.00, but he denies that said distribution in kind was made to him as a partial distribution of the estate; alleges that he is seized in fee simple of a one-half interest in the real estate and that his sister is seized in fee simple of the remaining undivided one-half.

Blanche M. Sohl, the wife of Curtis Sohl, sets up her contingent right of dower in the undivided one-half of the premises.

The cause came on to be heard upon the pleadings and on May 24, 1940, the Court found that Calvin Sohl died seized of the real estate, and that by his will his widow took a life estate only in his entire estate and that his two children each took an undivided half interest subject to the life estate of the widow. The Court then finds as to the lien of the claims asserted by the several cross-petitions, in favor of each substantially as claimed by the lienors, except as to priorities claimed.

The Court further finds that the plaintiff has received no part of the estate of Calvin; that Curtis, in 1930, received distribution in kind to the value of $20,000.00; that there is now no remaining personal property from which the plaintiff can receive an equal amount, and that by reason thereof the plaintiff has an equitable lien to the extent of $20,000.00 which is superior to the rights of Curtis Sohl, but on account of laches on the part of the plaintiff the Court finds that the plaintiff's equitable lien is inferior to the claim of F. Stanley Crooks and Maurice V. Clevenger, but superior to the claims of all other defendants.

The Court finds that the plaintiff has a legal right to the undivided half of the premises and to hold the same in severalty; that the defendant has a legal right to the undivided half of said premises, subject to the liens, and that the Theta Kappa Phi Fraternity is entitled to hold the premises until the expiration of its lease. It is directed that the property be appraised and the commissioners return their finding of the value into court.

Numerous exceptions are asserted. The plaintiff gave notice of appeal on law and fact from the judgment rendered on the 24th of May, 1940, setting up several judgments appealed from. The lienholders did not give notice of appeal.

The court below in summarizing his opinion concluded, in substance, that the two children received an undivided one-half share in remainder of the real estate and the court ordered the partition. The court further held that they are entitled to share equally; that Helen has an equitable lien against the share of her brother, Curtis, to the extent of $20,000.00; that Helen is estopped to assert her lien against certain of the cross-petitioners, who have set up mortgages and mechanic liens; that such mortgages are determined to be the first lien on the undivided half of Curtis, the brother; that upon the sale of the premises, after the payment of the mortgage and the mechanics' lien out of the proceeds of Curtis's share, Helen is entitled to the balance up to $20,000.00; that after she has received the $20,000.00, the balance shall be distributed in the order set out by the court to other lienholders and that any balance that may be left shall go to Curtis; that the fraternity is entitled to hold the premises until the expiration of the present lease. A decree was entered accordingly.

A motion for new trial was filed and overruled.

The plaintiff, Helen Sohl Eastman, filed notice of appeal from the order of the court finding that she had been guilty of laches; that the mortgage and the mechanic's lien are superior to

her lien on the undivided half interest of her brother, Curtis; that the fraternity is entitled to hold the premises until the expiration of the lease.

No other parties join in her appeal, neither do they file separate notices of appeal.

The assignment of errors asserts that the court erred as set out in the notice of appeal.

The court below filed a very carefully considered opinion.

Our view of the matter necessitates a statement of our conclusions, which, while they differ from those of the court below, will ultimately lead to practically the same conclusion.

Calvin Sohl, the father of the two children, died in 1930 leaving a will in which the second item is as follows:

"I give, devise and bequeath unto my wife, Cora Delkirk Sohl, all my estate, real, personal and mixed of whatsoever kind and wheresoever situated so long as she remains my widow. In the event of her remarriage, I direct that my said wife shall receive such portion of my estate as is provided by law and the remainder of my estate shall vest in and be divided equally between my two children, Curtis and Helen, share and share alike."

The case of **Fetter v Reetig** and **Fetter v Leifle, 98 Oh St 428,** holds that under a devise to the wife, "so long as she remains my widow my entire property, both real and personal, wherever it may be situated" the widow took only an estate for life subject to be terminated on remarriage and not having remarried and being now deceased, the real estate so devised to her passes to the next of kin of the testator as an estate in remainder in fee simple.

The case of **Johnson v Johnson, 51 Oh St 446,** holds that under a provision somewhat resembling that of the instant case, the widow took only a life estate in the property with power to consume and that what remained at the time of her death unconsumed belongs to the remaindermen designated in the will.

In **Millison et v Drake, 123 Oh St 249,** in an opinion by the court, it is held that a devise to the wife for life and equally to the children at her death, that there is a vested remainder in the children subject to divesting and that a good title is passed by deed of the wife and all of testator's children. It is stated on page 253 that the children of the testator each acquired a vested remainder in the property subject to be divested by the death of any child prior to the death of the life tenant, "and it is also conceded, as it must be, that a vested remainder is an alienable estate in land".

We must conclude that under the present will, the widow took a life estate and that upon the death of the testator the estate vested in the two children, subject to the life estate of the widow so long as she lived and that the estate so vested in the children could be alienated by a proper deed or mortgage.

It will be noted that the petition alleged that by virtue of the advancement and the fact that it is chargeable against Curtis in the division of the estate that the plaintiff is seized in fee of the **entire** interest in the real estate.

The chapter on partition includes §§12026 to 12050 GC. The first of these sections provides that tenants in common of any estate may be compelled to make or suffer partition thereof in the manner therein provided. It would appear that if the allegation of the petition to the effect that Helen is seized in fee of the "entire tire interest in the real estate" is true, that she can not call to her aid the chapter on partition for the simple reason that being the owner of the entire fee there is no occasion for partition and that she must seek her remedy in some other appropriate action. However, it is true that if, as a matter of fact, she is not seized of the entire fee, but only an undivided half interest therein, she can have partition under the provisions of the statute, notwithstanding the allegation of her petition.

The case of **Tabler v Wiseman, 2 Oh St 208,** contains an interesting discussion as to the effect of a partition. It is held,

"The proceeding in partition operates upon the possession, dissolves the unity before existing and enables each of the owners to have, possess and enjoy his own share of the common estate in severalty."

"It is well settled that such a proceeding does not decide title, or create any new title. It merely dissolves the tenancy in common, leaves the title as it was, except to locate such rights as the parties may have, respectively, in distinct parts of the premises, and to extinguish it in all others."

This statement is elaborated upon on pages 212-213 to the effect that before a partition may be had the applicant must show that he is submitted to the inconvenience of a joint possession. Until this is shown, there is no joint possession to sever and consequently nothing upon which the judgment of the court can operate.

**McBain v McBain, 15 Oh St 337,** holds, syllabus 3,

"Parties to proceedings in partition acquire no title thereby * * * ;" see also **Lawson v Townley, 90 Oh St 67.**

It must appear from these decisions that Helen can not acquire a title to the undivided half interest of her brother through a partition proceeding. All she can accomplish is to have, possess and enjoy her share of the estate in severalty.

A matter that must be given consideration arises from what is designated as an application to distribute assets in kind. In this application the mother and son, as executors of the estate, represent that among the assets are 6388 shares of stock of the City Service Company, and it is the desire of the executors to distribute in kind 1388 shares. The executors represent that it will be for the best interests of the estate to distribute the same in kind to Curtis, one of the beneficiaries named in the will. With this application there is filed a consent to such distribution by Helen Sohl Eastman to the effect that she joins in the application and consents to the distribution of 1388 shares of stock of the City Service Company to Curtice Sohl and gives her approval.

The entry of the Court is under date of December 30, 1930.

It will be observed in this application as well as at other places the distribution to Curtis is designated as a "distribution in kind". There has been some assertion that this distribution to Curtiss was not a distribution in kind but was more properly an advancement to be treated as such under the provisions of §10503-19 GC. We do not so find. It was a distribution in kind in anticipation of ultimate distribution of other shares to those who might be entitled thereto. Of course, if the widow was to get her income from these shares, their distribution to her son curtailed to that extent her income. Nevertheless, there was left in the estate 5000 shares of City Service from which the daughter might have had a like distribution had she made such an application and had her mother consented thereto. The transaction constituted a distribution in kind and not an advancement.

For almost ten years after the distribution in kind to the son, the widow remained a co-executor with her son and filed in the Probate Court proper accounts showing the transaction of the executor in reference to the personal property. There was a violent decline in value of not only the City Service Stock, but of other stocks held by the executors. Much of the City Service stock was sold on a declining market and the proceeds consumed or expended by the widow. The final account shows the estate depleted so far as personal estate is concerned except for a small cash item and that the only remaining portion of the estate, which was originally valued at $273,101.94, is

the real estate now sought to be partitioned.

This brings us to a consideration of what may now be done to equalize the distribution of this estate between the two children.

**Keever v Hunter, 62 Oh St 616,** holds that when the lands of an intestate descend to his children, there being no personal estate for distribution, the interest of each child in the land is subject to his indebtedness to the intestate. This is not the identical situation as in this case, but the discussion by Shauck, J., throws light upon the proper procedure.

**Parsons v Parsons, 52 Oh St 470,** holds that in the partition of lands of an intestate among his children and the child of a deceased son, the portion which the latter inherits should be charged with an advancement made to the father by such intestate. See also **Martin et v Martin, 56 Oh St 333.**

In **Lambright v Lambright, 74 Oh St 198,** it is held that the administrator has a right to retain out of the distributive share of an heir an amount equal to the debt owing by such heir and this right exists whether the heir was indebted to the deceased before his death or contracted a liability to the estate thereafter. A debt due from an heir is an asset of the estate and where the distributive portion of such heir is equal to or greater than his debt due the estate, the administrator should charge himself with, and account for, the full amount of the same.

The appellant urges that the position asserted by her is strongly supported in the case of **Fowler v Lund, 9 Abs 638.** In that case where the testator gave the life use of his estate to his widow, who was the executrix, and by residuary clause the estate was to be equally divided at her death between two groups of heirs and the executrix made advance distributions out of the corpus of the personal estate to one group of heirs and at her death the remainder of the personal estate was worthless, and it was held that in a partition suit of the real estate left by the decedent, the heirs to whom no advance distribution had been made

were entitled to have an amount deducted from the proceeds of the sale equal to that paid to the other group of heirs before the avails of the sale could be divided equally between the two groups.

While not exactly on all fours with the case at bar, this case strongly approaches the facts here under examination and we deem the solution there reached is applicable to the facts now before us.

It would not be equitable nor in keeping with the provisions of the will to permit the brother to receive a distribution in kind of the stock in question and then, upon the death of his mother, when the personal estate has been depleted, receive upon partition the value of his undivided half interest without being required to account for the distribution made to him.

The whole matter is before the court for the distribution of the fund arising from the sale of the real estate upon partition and the issues are properly presented and the court has jurisdiction to require the application of such portion of the sum received from the sale of the brother's half interest to the share to be received by the sister in order that each may receive an equal amount of the estate.

This is in harmony with a memorandum made by the brother and submitted to his sister for her acceptance, but not formally accepted by her. This memorandum is under date of April, 1931, and recites that whereas Curtis has received in advance a distribution in kind of $25,000.00 of City Serivce stock from said estate, it is agreed between them that at the time of the division of the estate, Helen is to receive $25,000.00 from the estate before any division is made and that the amount remaining after she has received the $25,000.00 is to be equally divided between them in accordance with the will of their father. This memorandum is in the form of an agreement and, as stated, was not signed by Helen, but is a declaration upon the part of Curtis of his understanding that he is to

account for the advancement upon the final distribution of the estate.

Much of the bill of exceptions is devoted to an attempt made by Curtis to prove that the stock was distributed to him in payment of a claim that he had against his father's estate by virtue of the operation by him and his father of a corporation in which they were both interested. We think he has failed in proving such a claim. He has admitted that it was a distribution in kind and should not now be heard to assert that it was in fact in payment of a debt due to him by his father. This is further borne out by the fact that all the papers in the Probate Court designate it as a distribution in kind and that had it been a claim against his father's estate, he, being the executor, would have been required to prove the claim and have the same allowed by the Probate Judge before it could be paid. He did not do this, which is another evidence of the fact that the transfer was not made in payment of any prior obligation, but was in fact what it was designated to be, a distribution in kind.

Thus far, we are in harmony with the decision of the court below, but we do not follow the court in reference to the equitable lien in favor of Helen.

It will be observed that soon after the death of the father an application for the transfer of real estate was made by Curtis Sohl, one of the executors, and the court on said application ordered that the real estate be transferred upon the duplicate of the county to the persons named and thereupon the certificate was issued and recorded; a life estate to the widow and one-half to each of the children, subject to such life estate. By this record, it is disclosed that the real estate, at least presumptively, belonged to the two children in fee, subject to the life estate of their mother.

Reliance could be properly placed upon the record and any liens that were acquired, either by virtue of a mortgage by Curtis or by judgment creditors would attach to the title of Curtis irrespective of the so-called equitable lien of the sister.

Sec. 10512-4 GC, provides that remainders, whether vested or contingent, executory interests and other expectant estates are descendable, devisable and alienable in the same manner as estates in possession. Under this statute Curtis had a right to alienate his estate under his father's will and, of course, that would cover his right to mortgage the same. See also §10509-186 GC.

We are conscious of the fact that counsel for appellant has presented in his brief many cases which seem at first to support his claim that the equitable lien of Helen was superior to the claim of the lienholders. In Reed v Ragsdale, 163 So., 324 (Ala.) it is held:

"Where money of an estate is advanced to one heir, the other heirs have an equitable lien on decedent's land to cover such debt and their lien is superior in equity to that of a judgment creditor of the heir."

See also Peck v Williams, 113 Ind., 256, where it is held that creditors of one tenant in common can only enforce their claims against the debtor's interest in the common estate subject to all the equitable interests of the other tenants therein.

Also Foltz v Wert, 103 Ind. 404, where it is held under a will somewhat similar to the one at bar, that where a distribution is made to the children in different amounts that the rights of some of the heirs could not be impaired by liens acquired on the interest of one without their consent, nor could they be deprived of any right incident to partition.

See also, Woodruff v Woodruff, 3 C. C. (N. S.), 616.

Hopkins v Thompson, 75 Mo. Ap. 401.

McCandless Appeal, 98 Pa., 489.

However, we discover differences that would, in our judgment, make these decisions inapplicable to the case at bar.

We do not believe that the question of laches arises, but are of the opinion that all lienholders who properly secured a lien upon Curtis's share are

entitled to be paid out of the fund arising from the sale of his share before the application of any portion of the balance to Helen on account of the advancement. To this extent the decree for partition as entered in the court below will be modified as to lienholders. This would advance the claim of Blanche P. Sohl for inchoate dower; the lien of Anna R. Cunningham and the lien of Russell Wertz so as to be superior to the lien of the plaintiff.

The court below found that the defendant, Theta Kappa Phi Fraternity is entitled to hold the premises until the expiration of the lease set up in its answer. This matter is not discussed by the court, but it appears that the lease was made by the executors for a period of five years which have not yet expired.

We are of the opinion that the lease is valid for its unexpired term upon the half interest of Curtis, but not upon the half interest of Helen. She denied that the lease covered her half interest and no evidence appears to the contrary.

Judgment accordingly.

HORNBECK, PJ. & BARNES, J., concur.